IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **JORDAN BLAKE TODD**<br>**Plaintiff,**<br><br>v.<br><br>Cavalry SVP I, LLC<br>**KAROL CANELA, AND**<br>**JAVITCH BLOCK LLC,**<br>**Defendants,** | )<br>)<br>)<br>) No.<br>)<br>)<br>)<br>)<br>) |

**JURY TRIAL DEMANDED**

**COMPLAINT**

**COMES NOW**, Plaintiff, JORDAN BLAKE TODD, by and through the undersigned counsel, and hereby files this Complaint against Defendants, CAVALRY SPV I, LLC, KAROL CANELA, and JAVITCH BLOCK LLC (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1. This is an action for damages brought by an individual consumer under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter, the "FDCPA") wherein Defendants communicated with Plaintiff in an attempt to collect a consumer debt in a manner that attempts to abuse, harass as well as unfairly deceive and mislead Plaintiff into making payment on such alleged debt in an amount that is not authorized by law.

**JURISDICTION AND VENUE**

2. Jurisdiction of this Court arises under **28 U.S.C. § 1331**, and pursuant to **15 U.S.C. § 1692k(d)**.

3. This action arises out of violations of the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq**. ("FDCPA") by all Defendants, in their illegal efforts to collect consumer

1

debts.

4. Venue is proper in this District because the acts and transactions occurred in this District and Plaintiff resides in this District.

5. Defendants are subject to the jurisdiction of this District because Defendants regularly conduct business in this District and regularly attempt to collect debts from consumer located in this District.

**PARTIES**

6. Plaintiff, Jordan Blake Todd (hereinafter referred to as "Plaintiff") is a natural person who resides in Sumner County, Tennessee and is a "consumer" as that term is defined by **15 U.S.C. § 1692a(3)** because he is a person allegedly obligated to pay a debt.

7. Defendant Cavalry SVP I, LLC, (hereinafter "Defendant Cavalry") is a "debt collector" as that term is defined by **15 U.S.C. § 1692a(6)**, is a for-profit Limited Liability Company organized in Delaware, and may be served through its agent for service of process at C T Corporation System, 300 Montvue Road, Knoxville, TN 37919 as its registered agent for service of process.

8. Defendant Karol Canela (hereinafter "Defendant Canela") is a natural person who was employed by Cavalry Portfolio Services, LLC as a collection agent and is a "debt collector" as that term is defined by **15 U.S.C. § 1692a(6)**, and may be served at his business address through its agent for service of process at C T Corporation System, 300 Montvue Road, Knoxville, TN 37919 as its registered agent for service of process.

9. Defendant Javitch Block LLC (hereinafter "Defendants Javitch") is a law office and are "debt collectors" as that term is defined by **15 U.S.C. § 1692a(6)**, is a for-profit Professional Limited Liability Company established in Ohio, and can be served through its

2

registered agent as follows: Javitch Block LLC, Registered Agent Solutions, Inc. 992 Davidson Drive, Suite B, Nashville, TN 37205-1051.

10. At all material times herein, Defendants use instrumentalities of interstate commerce or the mails in their respective businesses, the principal purpose of which is the collection of debts.

11. At all material times herein, Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due to another, or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

12. Defendants previously alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by **15 U.S.C. § 1692a (5)** (hereinafter, the "Alleged Debt"), namely, an alleged credit card debt originally owed to, or serviced by, Citibank N.A. (hereinafter "Citibank").

13. At all material times herein, the Alleged Debt is a consumer debt, an alleged obligation resulting from transactions for goods or services incurred primarily for personal, household, or family use.

14. Sometime prior to March 30, 2017, the Alleged Debt was consigned, sold, or otherwise transferred to Defendants for collection from Plaintiff Todd.

15. Plaintiff Todd was born July 15, 1997, and as such, he was not old enough to sign a contract with Citibank, N.A. on April 16, 2015.

### *February 11, 2021 Collection Lawsuit*

16. Prior to the filing of this Complaint, on or about February 11, 2021, Defendants filed a Civil Warrant and Affidavit against Plaintiff Todd in General Sessions Court of Sumner

3

Case 3:22-cv-00089   Document 1   Filed 02/10/22   Page 3 of 19 PageID #: 3

County (hereinafter collectively, the "Collection Lawsuit").

17. Defendant Javitch filed the Civil Warrant and Affidavit against Plaintiff in the General Sessions Court of Sumner County, Tennessee.

18. The matter came on for hearing on July 13, 2021 and the Collection Lawsuit was Dismissed without Prejudice.

19. Before the hearing date of July 13, 2021, Plaintiff Todd filed a Motion to Dismiss and Sworn Denial.

20. On or before February 19, 2021, Defendants served Plaintiff Todd with the Collection Lawsuit in connection with collection of the Alleged Debt and in an attempt to collect the Alleged Debt. As such, Defendants made a "communication" as defined by **15 U.S.C. § 1692a(2)**.

21. Similarly, the sworn Affidavit was filed and served in connection with collection of the Alleged Debt and in an attempt to collect the Alleged Debt and is therefore a "communication" as defined by **15 U.S.C. § 1692a(2)**.

22. Importantly, at the time the Defendant Cavalry purchased Plaintiff Todd's Alleged Debt account, Defendants had not received any documents which: (a) could be used as evidence to show, in a court of law, that Plaintiff Todd had entered into a Contract with any entity creating the Alleged Debt or opening an account, (b) show how the amount claimed as due was calculated or what Plaintiff Todd received in return for incurring the Alleged Debt, (c) show how the pre-judgment interest on the Alleged Debt was to be calculated, and (d) show when the Alleged Debt went into default and what acts by Plaintiff Todd caused the alleged default. Defendants did not possess any such documents as of the date they filed the Collection Lawsuit.

23. Despite the fact that Defendants possessed no evidence showing that Plaintiff Todd

4

owed the Alleged Debt amount asserted by Defendants—and prior to making a reasonable and adequate investigation as to whether Plaintiff Todd owed the Alleged Debt amount asserted nu Defendants—Defendant Cavalry and Defendant Javitch filed the Collection Lawsuit against Plaintiff Todd in General Sessions Court, seeking to collect Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36), court costs, and service of process fees.

24. Defendant Cavalry and Defendant Javitch alleged in their Collection Lawsuit that Defendant Cavalry is the assignee of Citibank N.A. but provided no evidence—either before or since the filing of the Collection Lawsuit—supporting the truthfulness of this allegation.

25. Defendant Cavalry and Defendant Javitch made an intentional business decision not to obtain knowledge as to whether a written Contract existed between Citibank N.A. and Plaintiff Todd, or if there was other documentation showing when or how the Alleged Debt was incurred (a) prior to making a reasonable and adequate investigation as to whether Plaintiff Todd owed the Alleged Debt amount Defendant attempted to collect, and (b) by attaching Defendant Affiant Canela's Affidavit, whose knowledge of the specifics of the original debt is limited or non-existent, intending to either obtain a default Judgment or coerce Plaintiff Todd into a Settlement and/or payment plan.

26. When Defendant Cavalry purchased Plaintiff Todd's Alleged Debt, Defendants had not received any supporting documentation of the Alleged Debt, including, but not limited to, (a) the alleged underlying Contract between Citibank N.A. and Plaintiff Todd, (b) anything bearing Plaintiff Todd's signature, (c) any documentation regarding what Plaintiff Todd purchased or when he made a purchase, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the Alleged Debt was calculated, or (g) any information which informs or shows them which portion of the Alleged Debt is principal and which portion is interest.

5

27. The filing of a Collection Lawsuit is a collection activity.

28. The filing of the Collection Lawsuit against Plaintiff Todd by Defendants in the Tennessee State Courts is no less than "active" debt collection activity than telephone calls, letters, or any other form of communication made in an attempt to collect a debt.

29. The comparison between active and passive is easily understood. If you do something you are being active. If you have something done to you, you are being passive.

30. The Defendants were not contemplating, speculating, or being passive about filing the Collection Lawsuit against Plaintiff Todd. To be clear, Defendants filed and served the Collection Lawsuit against Plaintiff Todd.

31. The Defendants failed to maintain (i.e., actually employ or implement) procedures to avoid errors under the FDCPA, during the collection of Plaintiff Todd's Alleged Debt.

### *Use of False, Deceptive and Misleading Warrant to Collect Debt*

32. The Collection Lawsuit against Plaintiff Todd was based on a sworn Account.

33. Defendants' sworn Account claim was defective because this claim was knowingly based on false, deceptive, and misleading statements in the sworn Affidavit filed with the Civil Warrant that were intended to deceive the State Court and Plaintiff Todd.

34. By filing the Civil Warrant, Defendant Cavalry and Defendant Javitch used deceptive and misleading representations or means in connection with collection of the Alleged Debt while unreasonably relying on Citibank N.A. or an assignee of Citibank N.A. as to the amount of debt allegedly owed by Plaintiff Todd. Without knowledge of whether a written Contract existed or what it provided, Defendant Cavalry and Defendant Javitch communicated credit information to the State Court, the general public, and Plaintiff Todd, which is known or should be known to be false, in violation of **15 U.S.C. § 1692e(2).**

35. Defendants' Collection Lawsuit sought to collect Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36) from Plaintiff Todd plus court cost, additional accrued interest, and service of process costs.

36. Defendant Cavalry and Defendant Javitch intentionally made a business decision to file the Collection Lawsuit without (a) obtaining knowledge as to whether a written Contract existed between Citibank N.A. and Plaintiff Todd or if there was other documentation showing when or how the Alleged Debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff Todd owed the amount of the Alleged Debt Defendants were attempting to collect. Instead, Defendants solely relied on third-parties for this information.

37. Defendant Cavalry and Defendant Javitch's business decision to rely entirely on Citibank N.A. as to the amount of debt allegedly owed by Plaintiff Todd without (a) obtaining knowledge as to whether a written Contract existed between Citibank N.A. and Plaintiff Todd if there was other documentation showing when or how the Alleged Debt was incurred, and (b) making a reasonable and adequate investigation as to whether Plaintiff Todd owed the amount of debt they were attempting to collect, was not a procedure reasonably adapted to avoid using a deceptive or misleading representation or means in connection with collection of the Alleged Debt.

38. By making a business decision to intentionally not (a) obtain knowledge as to whether a written Contract existed between Citibank N.A. and Plaintiff Todd if there was other documentation showing when or how the Alleged Debt was incurred, and (b) make a reasonable and adequate investigation as to whether Plaintiff Todd owed the amount of debt Defendants asserted as owed and due prior to filing the Collection Lawsuit, Defendant Cavalry and Defendant Javitch intentionally used a deceptive and misleading representation in connection with collection of the Alleged Debt as to the amount allegedly owed by Plaintiff Todd.

39. The statement in the Civil Warrant that Plaintiff Todd owed Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36), plus court cost, additional accrued interest, and service of process costs was an amount based on a business decision to intentionally not (a) obtain knowledge as to whether a written Contract existed between Citibank N.A. and Plaintiff Todd or if there was other documentation showing when or how the Alleged Debt was incurred, and (b) make a reasonable and adequate investigation as to whether Plaintiff Todd owed the amount of debt Defendants sought from Plaintiff Todd constitutes the use of deceptive and misleading representations or means in connection with collection of the Alleged Debt as it could easily create a false impression in the mind of the least sophisticated consumer that Defendant Cavalry and Defendant Javitch had attempted to properly calculate the amount owed prior to filing the Civil Warrant, when the Defendant Cavalry and Defendant Javitch had intentionally made no effort to do so, and the amount of the Alleged Debt was not authorized by the Agreement creating the Alleged Debt or permitted by law, in violation of **15 U.S.C. § 1692e, 1692e(5)**, **1692e(10), and 1692f(1)**.

### *Use of False, Deceptive and Misleading Affidavit to Collect Debt*

40. An Affidavit filed in support of a Civil Warrant on a sworn Account in Tennessee is filed to attest to the correctness of the amount owed on the account. **Tenn. Code Ann. § 24-5-107(a)**.

41. Defendant "Affiant Canela", who authored the Affidavit attached to the Civil Warrant filed on February 11, 2021, dated December 15, 2020, was certified under penalty of perjury that the following statements are true and correct:

> 1. "I am employed by Cavalry Portfolio Services, LLC ("CPS"). CPS performs collection services for Cavalry SPV I, LLC. I am an authorized representative for Cavalry SPV I, LLC and am a competent person more than eighteen years of age. I am authorized to make the statement in this affidavit."

  2. "I am familiar with the method by which CPS, on behalf of Cavalry SPV I, LLC, creates and maintains business records pertaining to the Account as defined below.."
  3. "CPS, on behalf of Cavalry SPV I, LLC, maintains computerized account records and documents for account holders. CPS maintains such records in the ordinary and routine course of business and it is the regular business practice of CPS to accurately record any business act, condition or event onto the computer record maintained for each account. The entries are made at or very near the time of any such occurrence."
  4. "I have access to and have reviewed the applicable business records CPS maintains on behalf of Cavalry SPVI, LLC as they relate to the Account, and I make the statements in this Affidavit based upon information from that review. Information contained in those records reflects the following:"
    a. "That, JORDAN TODD, the "Account Holder", opened an account on 04/16/2015, which account was charged off on 02/19/2016 (the "Account")."
    b. "That the Account was purchased by Cavalry SPV I, LLC on or about 03/30/2017 from Citibank, N.A.. Prior to Cavalry SPV I, LLC's ownership of the account, the credit was Citibank, N.A.."
    c. "On 12/08/2020, the records CPS maintains on behalf of Cavalry SPV I, LLC showed that the Account Holder owed a balance of $5,419.36."
  5. "Based on a review of the Department of Defense database, the Account Holder is/are not an active member of the United States Armed Forces."
  6. "I certify under oath that to the best of my knowledge the above statements are true and correct."

  42. Prior to signing the Affidavit, Affiant Canela did not review any records of the originator of the Alleged Debt or make any effort to determine if there was a Contract signed by Plaintiff Todd and, if so, whether the amount of the Alleged Debt asserted as owed by Plaintiff Todd in the Affidavit was correct.

  43. The reason Affiant Canela did not review any records of the originator of the Alleged Debt or make any effort to determine if there was a Contract signed by Plaintiff Todd and, if so, whether the amount of the Alleged Debt asserted as owed by Plaintiff Todd in the Affidavit was correct, prior to signing the Affidavit was because the Defendant Cavalry had made a business decision not to obtain any records of the originator of the debt that would have allowed her to make this determination.

  44. The only records held by the Defendant Cavalry at the time Affiant Canela signed the Affidavit were computer records, which contained very limited information about Plaintiff

9

Todd and the Alleged Debt.

45. The only records that Affiant Canela was able to review prior to signing the Affidavit were the limited computer records obtained by the Cavalry Portfolio Services, LLC.

46. Without any records of the originator of the debt available for review to determine if there was a Contract signed by Plaintiff Todd and if so, whether the amount of the Alleged Debt was owed by Plaintiff Todd in the Affidavit was correct as required by Tennessee State Law for an Affidavit, it was impossible for Affiant Canela to truthfully make an Affidavit as to the correctness of the amount owed, if any, by Plaintiff Todd.

47. The intentional use by Defendants of the Affidavit when its use is clearly in violation of the State Law requirements for a sworn Account; is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, in violation of **15 U.S.C. § 1692e** and **1692e(10)**, and is an unfair means to collect or attempt to collect the alleged debt in violation of **15 U.S.C. § 1692f**.

48. Affiant Cenela's sworn Affidavit states the following:

1. "I am employed by Cavalry Portfolio Services, LLC ("CPS"). CPS performs collection services for Cavalry SPV I, LLC. I am an authorized representative for Cavalry SPV I, LLC and am a competent person more than eighteen years of age. I am authorized to make the statement in this affidavit."
2. "I am familiar with the method by which CPS, on behalf of Cavalry SPV I, LLC, creates and maintains business records pertaining to the Account as defined below.."
3. "CPS, on behalf of Cavalry SPV I, LLC, maintains computerized account records and documents for account holders. CPS maintains such records in the ordinary and routine course of business and it is the regular business practice of CPS to accurately record any business act, condition or event onto the computer record maintained for each account. The entries are made at or very near the time of any such occurrence."
4. "I have access to and have reviewed the applicable business records CPS maintains on behalf of Cavalry SPVI, LLC as they relate to the Account, and I make the statements in this Affidavit based upon information from that review. Information contained in those records reflects the following:"
   a. "That, JORDAN TODD, the "Account Holder", opened an account on 04/16/2015, which account was charged off on 02/19/2016 (the "Account")."
   b. "That the Account was purchased by Cavalry SPV I, LLC on or about

03/30/2017 from Citibank, N.A.. Prior to Cavalry SPV I, LLC's ownership of the account, the credit was Citibank, N.A.."

c. "On 12/08/2020, the records CPS maintains on behalf of Cavalry SPV I, LLC showed that the Account Holder owed a balance of $5,419.36."

5. "Based on a review of the Department of Defense database, the Account Holder is/are not an active member of the United States Armed Forces."

6. "I certify under oath that to the best of my knowledge the above statements are true and correct."

49. These statements are a failed attempt to regurgitate the language from the **Tennessee Rules of Evidence, Rules 803 (6)** and **902 (11)**, in an intentional attempt to mislead the State Court and Plaintiff Todd into believing that Affiant Canela was someone who possessed personal knowledge of the amount of the Alleged Debt and that Plaintiff Todd in fact owed the Alleged Debt—when it was not possible for her to possess such personal knowledge—and that this evidence should be admitted under the "Business Records" exception to the introduction of hearsay evidence.

50. Defendants filed the Collection Lawsuit against Plaintiff Todd in an attempt to collect the Alleged Debt intentionally using a false, deceptive and misleading Affidavit as the only evidentiary basis to support their claims.

51. The intentional use by the Defendants of the false, deceptive, and misleading Affidavit in connection with collection of the Alleged Debt was not a procedure reasonably adapted to avoid violating the FDCPA in their attempts to collect the Alleged Debt from Plaintiff Todd.

52. The attestations made by Affiant Canela in the Affidavit regarding the Alleged Debt, including, but not limited to, the amount of the Alleged Debt purportedly owed by Plaintiff Todd, were false, deceptive and misleading misrepresentations made without the information or ability to make a sworn Affidavit as to the correctness of the amount owed, if any, by Plaintiff Todd, as required by Tennessee State Law, in violation of **15 U.S.C. § 1692e(2)**, and the false

11

representation of the character, amount, or legal status of the debt is the use of a false, deceptive, and misleading representation or means in connection with collection of the debt to collect or attempt to collect the debt, and in violation of **15 U.S.C. § 1692e(2) and 1692e(10)**.

53. By filing the Collection Lawsuits against Plaintiff Todd in an attempt to collect the Alleged Debt with the use of an Affidavit that contains false, deceptive and misleading misrepresentations made by individuals who allege facts not in their possession and in violation of Tennessee State Law, Defendant Cavalry and Defendant Javitch used false, deceptive, and misleading representation or means in connection with collection of the Alleged Debt that would create a false impression in the mind of the least sophisticated consumer that Defendant Cavalry and Defendant Javitch maintained the legal right to attempt to collect the Alleged Debt in the manner in which they attempted to collect it, in violation of **15 U.S.C. § 1692e(2), and 1692e(10)**.

54. Prior to filing the sworn Affidavit, Defendants did not possess knowledge as to whether a written Contract existed between Citibank, N.A. and Plaintiff Todd or if there was other documentation showing when or how the Alleged Debt was incurred.

55. Prior to filing the sworn Affidavit, Defendants intentionally chose not to have Affiant Canela review a copy of the written Contract signed by Plaintiff Todd, other evidence as to the amount of the Alleged Debt allegedly owed by Plaintiff Todd, or the fact that Plaintiff Todd owed the Alleged Debt at all.

56. The statement in the Affidavit that Plaintiff Todd owed Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36), plus additional accrued interest from time of assignment, plus attorney's fees, after the Defendant Cavalry and Defendant Javitch intentionally chose not to obtain or to have Affiant Canela review a copy of the written Contract signed by Plaintiff Todd, other evidence as to the amount of the Alleged Debt, or the fact that

Plaintiff Todd owed the Alleged Debt at all, prior to executing the sworn Affidavit, was the use of deceptive and misleading representations or means in connection with collection of the Alleged Debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had attempted to properly calculate the amount owed prior to filing the Affidavit, when Defendants had intentionally made no effort to do so, in violation of **15 U.S.C. § 1692e, 1692e (5)**, and **1692e (10)**.

### *Illegal Debt Collection, and Collection Service Conduct by Defendants Caused Plaintiff to Suffer Actual Damages*

57. That the above-detailed conduct by Defendants, of harassment, abuse, false, misleading, unfair and deceptive acts and/or practices in illegally attempting to collect a debt from Plaintiff Todd in violation of numerous and multiple provisions of the **Tennessee Collection Service Act**, including, but not limited to, the above-cited provisions of the **Tennessee Collection Service Act**, and multiple provisions of the FDCPA, including, but not limited to, all of the above mentioned provisions of the FDCPA and a revelation of private financial data to third parties.

58. That Plaintiff Todd has suffered actual damages as a result of these illegal communications and collection attempts by Defendants in the form of attorney's fees costs, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other motions, as well as suffering from unjustified and abusive invasions of personal privacy.

59. That Plaintiff Todd is informed and believes and, therefore, alleges that Defendants knowingly and intentionally engaged in harassing, abusive, false, misleading, unfair, deceptive and illegal debt collection.

### *Summary*

60. The above-detailed conduct by Defendants in connection with collection of the

Alleged Debt and in an attempt to collect the Alleged Debt was conducted in violation of numerous and multiple provisions of the FDCPA including, but not limited to, the above-cited provisions of the FDCPA.

### *Respondeat Superior Liability*

61. In addition to their individual liability under the FDCPA, the acts and omissions of Affiant Canela and Defendant Javitch as agents for the Defendant Cavalry and who communicated with Plaintiff Todd were committed within the time and space limits of their agency relationship with their principals, Defendant Cavalry.

62. The acts and omissions by Affiant Canela and Defendant Javitch were incidental to, or of the same general nature as, the responsibilities they were authorized to perform by the Defendant Cavalry in collecting consumer debts (i.e., the Alleged Debt).

63. By committing these acts and omissions against Plaintiff Todd, Affiant Canela and Defendant Javitch were motivated to benefit their principals, Defendant Cavalry.

64. The Defendant Cavalry is therefore liable to Plaintiff Todd through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors and omissions done in violation of Federal Law by the debt collectors employed as agents by the Defendant Cavalry including, but not limited to, violations of the FDCPA, in their attempts to collect the Alleged Debt from Plaintiff Todd.

### **TRIAL BY JURY**

65. Plaintiff Todd is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

### **CAUSES OF ACTION**

### **COUNT I.**

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692d

66. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs one (1) through sixty-four (64) upon herein with the same force and effect as if the same were set forth at length herein and further states as follows:

67. Defendants are subject to, and each violated the provisions of, **15 U.S.C. § 1692d** by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with Defendants' efforts to collect the Alleged Debt from Plaintiff.

68. When Defendant Cavalry purchased Plaintiff Todd's Alleged Debt, Defendants had not received any supporting documentation of the Alleged Debt, including, but not limited to, (a) the alleged underlying Contract between Citibank N.A. and Plaintiff Todd, (b) anything bearing Plaintiff Todd's signature, (c) any documentation regarding what Plaintiff Todd purchased or when he made a purchase, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the alleged debt was calculated, or (g) any information which informs or shows them which portion of the Alleged Debt is principal and which portion is interest.

69. Specifically, Defendants filed the Collection Lawsuit without conducting due diligence as to whether there was a Contract signed by Plaintiff Todd and, if so, whether the amount of the Alleged Debt asserted as owed by Plaintiff Todd in the Affidavit was correct.

70. Subsequently, Defendants served the Collection Lawsuit on Plaintiff Todd.

71. The filing and service of a Collection Lawsuit is a collection activity.

72. Defendants' conduct served no purpose other than to abuse and harass Plaintiff Todd into paying the Alleged Debt, intending to lead Plaintiff Todd to believe that he had no choice other than to pay or settle the Alleged Debt or else continue to endure Defendants abusive and

oppressive efforts to collect the Alleged Debt.

73. As a direct and proximate result of Defendants' actions and inactions, Plaintiff sustained damages as defined by **15 U.S.C. § 1692k**.

## COUNT II.

## <u>VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>

### 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10)

74. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs one (1) through sixty-four (64) upon herein with the same force and effect as if the same were set forth at length herein and further states as follows:

75. Defendants are subject to, and each violated the provisions of, **15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10)** by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

76. More specifically, Defendants violated **15 U.S.C. §§ 1692e, 1692e(2), and e(10)** by misleading the least sophisticated consumer to believe that he had a legally binding contract on which he failed to pay the amount of Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36) without verifying that the Alleged Debt was Plaintiff Todd's liability.

77. When Defendant Cavalry purchased Plaintiff Todd's Alleged Debt, Defendants had not received any supporting documentation of the Alleged Debt, including, but not limited to, (a) the alleged underlying Contract between Citibank N.A. and Plaintiff Todd, (b) anything bearing Plaintiff Todd's signature, (c) any documentation regarding what Plaintiff Todd purchased or when he made a purchase, (d) monthly billing statements, (e) a payment history, (f) documents showing how the amount of the alleged debt was calculated, or (g) any information which informs or shows

16

them which portion of the Alleged Debt is principal and which portion is interest.

78. Specifically, Defendants filed the Collection Lawsuit without conducting due diligence as to whether there was a Contract signed by Plaintiff Todd and, if so, whether the amount of the Alleged Debt asserted as owed by Plaintiff Todd in the Affidavit was correct.

79. Subsequently, Defendants served the Collection Lawsuit on Plaintiff Todd.

80. The filing and service of a Collection Lawsuit is a collection activity.

81. As a direct and proximate result of Defendants' actions and inactions, Plaintiff sustained damages as defined by **15 U.S.C. § 1692k**.

## COUNT III.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692f and 1692f(1)

82. Plaintiff repeats, reiterates and incorporates the allegations contained in the paragraphs one (1) through sixty-four (64) upon herein with the same force and effect as if the same were set forth at length herein and further states as follows:

83. Defendants are subject to, and each violated the provisions of, **15 U.S.C. § 1692f and 1692f(1)** by using unfair or unconscionable means in an attempt to collect the Alleged Debt and by attempting to collect an amount not expressly authorized by the agreement creating the Alleged Debt or permitted by law.

84. More specifically, Defendants violated **15 U.S.C. §§ 1692f and 1692f(1)** by unfairly and unconscionably filing and serving the Collection Lawsuit against Plaintiff—asserting an amount owed from Plaintiff on the Alleged Debt—as Defendants failed to conduct reasonable due diligence to establish that Plaintiff owed the amount asserted by Defendants in the Collection Lawsuit.

85. Additionally, by filing and serving the Collection Lawsuit, Defendants falsely asserted that Plaintiff owed and failed to pay the amount of Five Thousand Four Hundred Nineteen Dollars and thirty-six Cents ($5,419.36).

86. As stated herein, Defendants did not verify that the Alleged Debt was Plaintiff Todd's liability prior to filing and serving the Collection Lawsuit, and cannot establish that Plaintiff owes such amount on the Alleged Debt.

87. Therefore, Defendants unfairly and unconscionably attempted to collect an amount from Plaintiff that is not expressly authorized by any agreement creating the Alleged Debt and is not otherwise permitted by law.

88. The filing and service of a Collection Lawsuit is a collection activity.

89. As a direct and proximate result of Defendants' actions and inactions, Plaintiff sustained damages as defined by **15 U.S.C. § 1692k**.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Todd prays that judgment be entered against each and every Defendant for:

    a. an award of actual damages pursuant to **15 U.S.C. § 1692k(a)(1)** against each and every Defendant in an amount to be determined at trial by a jury;

    b. an award of statutory damages pursuant to **15 U.S.C. § 1692k(a)(2)(A)** in the amount of One Thousand Dollars ($1,000.00) against each and every Defendant;

    c. an award of attorneys' fees and costs; and

    d. any other relief deemed just and proper by the Court.

Dated          <u>February 10, 2022</u>

    Respectfully submitted on behalf of,

**JORDAN BLAKE TODD, PLAINTIFF**

*/s/ William M. Kaludis*
William M. Kaludis, Attorney for Plaintiff
SHIELD LAW GROUP
BPR #017433
5115 Maryland Way, Suite 911
Brentwood, TN 37027
Telephone: (615) 742-8020
Facsimile: (615) 920-5988
bill@shieldlawgroup.com